# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.*
NEW MEXICO SOCIETY FOR
ACUPUNCTURE AND ASIAN MEDICINE,

        Plaintiff,

                                                                                       No. CV 17-250 JCH

v.

KINETACORE HOLDINGS, LLC,
EDO ZYSTRA, KERI MAYWHORT,
JOHN AND JANES DOES,

        Defendants.

## ORDER DENYING TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

This matter comes before the Court on Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction **[Doc. 10]** in which Plaintiff seeks to enjoin Defendants from conducting a training course for physical therapists on the technique of "dry needling." The Court held a hearing on the motion on February 23, 2017. At the conclusion of the hearing, having considered the motion, briefs, relevant law, and argument, the Court denied the motion.

### I.     FACTUAL BACKGROUND

In 1997 the New Mexico legislature enacted the Physical Therapy Act, NMSA 1978, § 61-12D-1 to -19 (1997), "to protect the public health, safety and welfare and provide for control, supervision, licensure and regulation of the practice of physical therapy." Section 61-12D-2. To those ends, the Physical Therapy Act includes a provision defining the scope of physical therapy practice in New Mexico, Section 61-12D-3(I), and creates a physical therapy board whose

powers and duties include "regulat[ing] the practice of physical therapy by interpreting and enforcing the provisions of the Physical Therapy Act." Section 61-12D-5(B).

Defendant Kinetacore Holdings (Kinetacore) is a Kentucky-based company that offers training courses to physical therapists in the technique of dry-needling. Dry needling is a treatment that involves the insertion of thin needles into a person's muscles to release trigger points and relieve pain. The needles used in dry needling are the same type of needle used for acupuncture. The practice of dry needling is not specifically mentioned in the New Mexico statute defining the scope of practice for physical therapists in this state. *See* § 61-12D-3(I). However, in a letter from March 21, 2000, the New Mexico Physical Therapy Board concluded that the use of dry needling by physical therapists in New Mexico does not violate Section 61-12D-3(D)(I)(2). **[Doc 15-1]** A transcript from an August 28, 2014 meeting of the New Mexico Physical Therapy Board captures a brief discussion by the Board's members on the practice of dry needling by physical therapists. **[Plaintiff's exhibit]** The transcript indicates that the Board had not changed its position since the 2000 letter and accepted the practice of dry needling by physical therapists.

Kinetacore scheduled a training seminar called "Functional Dry Needling Level 1" in Albuquerque, NM on February 25 and 26, 2017. Plaintiff, the New Mexico Society for Acupuncture and Asian Medicine, filed a Complaint for Injunctive Relief in New Mexico state court on February 10, 2017, seeking to enjoin Defendants from presenting the seminar. **[Doc. 1-1]** Defendant filed a notice of removal to this Court on February 21, 2017. **[Doc. 1]**

Plaintiff argues that physical therapists in New Mexico should not be allowed to practice dry needling because they are not licensed to practice acupuncture in New Mexico. **[Doc. 12, p. 3-4]** Plaintiff also argues that allowing physical therapists to perform dry needling is outside their

scope of practice as defined by the Physical Therapy Act at Section 61-12D-3(I), and would therefore amount to practicing medicine without a license. **[Doc. 12, p. 3-5]** Accordingly, Plaintiff filed a motion pursuant to NMSA 1978, Section 61-6-22, which allows for injunctive relief against "any person [who] engages in the practice of medicine . . . without possessing a valid license to do so."

## II.     CONCLUSIONS OF LAW

The substantive requirements for a preliminary injunction and temporary restraining order are identical. *See Valley Community Pres. Comm'n v. Mineta*, 246 F. Supp. 2d 1163, 1165-66 (D.N.M. 2002) (citing *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994)), *aff'd on different grounds*, 373 F.3d 1078 (10th Cir. 2004). The Supreme Court has observed "that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quotation omitted). Similarly, the Court of Appeals for the Tenth Circuit has noted that "'a preliminary injunction is an extraordinary remedy, [and thus] the right to relief must be clear and unequivocal.'" *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991)). In order for a party to be entitled to a temporary restraining order or a preliminary injunction, that party must show "(1) he or she will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits." *Id*. at 1258 (quoting *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003)) (alterations omitted).

### A. Irreparable Harm

Irreparable harm must be imminent and not remote or speculative. *See* 13 James W. Moore *et al.*, Moore's Federal Practice ¶ 65.22[ 1][ b] at 65-43 to 44 (3d ed. 2002). "[It] is an injury for which the court could not compensate the movant should the movant prevail in the final decree. Thus, lost income or other economic loss that is calculable and compensable by monetary damages ordinarily will not be considered irreparable injury." *Id.* at 65-42; *see also* 13 Moore 65.22[1][d] (a court will not issue a preliminary injunction if there is an adequate remedy at law available).

Here, Plaintiff argues that the primary harm it will suffer is an exacerbation of the public's fear of needles, which will have negative effect on the ability of acupuncturists in New Mexico to maintain their livelihood. **[Doc. 12, p. 10]** Plaintiff also argues that there could be harm to the public if the physical therapists attending the training injure their patients with needles during treatment. **[Doc. 12, p. 10-11]** However, physical therapists in New Mexico have been trained in and have used the technique of dry needling for at least seventeen years, and Plaintiff has not presented evidence of any injuries resulting from the practice, nor is there evidence in the record that anyone has been harmed as a result of training seminars like the one at issue here. Plaintiff's arguments are thus highly speculative, and Plaintiff has not satisfied its burden of demonstrating that it, or the public will suffer any imminent, irreparable harm.

### B. Balance of Harms

Plaintiff contends that the only harm to Defendants would be a slight delay and the cost of rescheduling of the training seminar. **[Doc. 12, p. 12]** Plaintiff argues that this harm is "vastly" outweighed by the threat to the public of allowing physical therapists with insufficient training insert acupuncture needles into their patients. **[*Id*.]** However, as previously discussed, Plaintiff

has not provided sufficient evidence to support its claim that Defendants' training seminar and the subsequent use of dry needling by the physical therapists in attendance would result in harm. Thus, Plaintiff has not shown that any such harm outweighs the damage to Defendants.

### C. Public Interest

Similarly, because Plaintiff has not made a sufficient showing of harm, it has not proven that the injunction would not be adverse to the public interest. Physical therapists have been using this dry needling technique in New Mexico for years, with the approval of the Physical Therapy Board. It is the Physical Therapy Board's responsibility to regulate the practice of physical therapy and interpret the Physical Therapy Act in light of its stated purpose to "protect the public health, safety and welfare." The Court views the Physical Therapy Board's position as evidence that the practice in question is not adverse to the public interest. Plaintiff has not made an evidentiary showing to the contrary, and therefore has not satisfied its burden to prove that the injunction is in the interest of the public.

### D. Substantial Likelihood of Success on the Merits

Finally, Plaintiff maintains that it will likely succeed on the merits of its claim that the practice of dry needling by physical therapists violates New Mexico law prohibiting the practice of medicine without a license. **[Doc. 12, p. 3-10]** The determination of the scope of practice for physical therapists in New Mexico depends upon an interpretation of Section 61-12D-3(I), which defines the practice of physical therapy, in pertinent part, as:

> (2) alleviating impairments and functional limitations by designing, implementing and modifying therapeutic interventions that include therapeutic exercise; functional training in self-care and community or work reintegration; manual therapy techniques, including soft tissue and joint mobilization and manipulation; therapeutic massage; assistive and adaptive devices and equipment; bronchopulmonary hygiene; debridement and wound care; physical agents; mechanical and electrotherapeutic modalities; and patient-related instruction.

Whether dry needling falls within this definition is a question that requires specialized knowledge of the physical therapy related terminology, which the Court, admittedly, does not possess. Fortunately, however, the Physical Therapy Board, of which three of the five members are physical therapists, *see* Section 61-12D-4(A), has been granted the power to "interpret[] and enforce[] the provisions of the Physical Therapy Act." Section 61-12D-5(B). Accordingly, this Court will defer to the Physical Therapy Board's interpretation that dry needling is permitted under Section 61-12D-3(I) of the Physical Therapy Act. **[*See* Doc. 15-1]** Absent any evidence that the Physical Therapy Board has changed its position or that its position has been problematic in the subsequent years, the Court concludes that Plaintiff has not demonstrated that it is substantially likely to prevail on the merits of its claim.

    **IT IS THEREFORE ORDERED**, for the reasons stated herein and on the record, that Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, filed February 22, 2017 **[Doc. 10]** is hereby **DENIED**.

    **IT IS SO ORDERED**.

                                                   **UNITED STATES DISTRICT JUDGE**